David STERN, a Minor, et al., Plaintiffs,

v.

NEW HAVEN COMMUNITY SCHOOLS, a Michigan School District, et al., Defendants.

Civ. No. 80–30109.

United States District Court, E. D. Michigan, S. D.

April 23, 1981.

Janet M. Tooley, Detroit, Mich., for plaintiffs.

James N. Martin, Mount Clemens, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This matter is presently before the Court on motion by the remaining defendants, New Haven Community Schools, et al. A stipulated order of dismissal against Sommerville Communications Corporation was entered on June 11, 1981, wherein the parties agreed to dismiss the matter against said defendant without prejudice and to pursue same in state court.

Defendants' motion for summary judgment and/or to dismiss argues six propositions of law. They are:

I.) Plaintiffs' entire complaint must be stricken due to its failure to comply with F.R.Civ.P. 8(e)(1).

II.) The allegations in plaintiffs' amended complaint of common law torts do not give rise to a 42 U.S.C. § 1983 action.

III.) Plaintiffs have failed to state a cognizable claim because the amended complaint is based upon allegations of a conspiracy to deprive plaintiff. David Stern, of his rights, without the required allegations that the defendants conspired against the plaintiff based upon some class-based, invidiously discriminatory animus.

IV.) The individual defendants possess a qualified good-faith immunity from liability under 42 U.S.C. § 1983.

V.) The claims of plaintiffs Loren Stern and Loretta Stern, are totally without merit.

VI.) Defendant, New Haven Community Schools, is immune from § 1983 liability because the alleged injuries of the plaintiffs were inflicted solely by the employees or agents of defendant, New Haven Community Schools.

The following factual allegations may be discerned from the complaint.

The mirror in the boys' restroom at New Haven High School is of a two-way nature. On November 15, 1979, David Stern, a tenth-grade student, was observed through the two-way mirror buying marijuana from another student during school hours. The observation was made by Brett Harris, an employee of the school, who was acting under the direction of Joe Barnett, principal. Harris notified Barnett of the incident. Barnett thereafter called student Stern to his office. Barnett told Stern that if he cooperated and turned the marijuana over to him, then the police would not be notified. Stern cooperated fully. The other student initially denied everything and refused to cooperate. As a result, both students were reported to the police. The complaint does not allege what, if anything, transpired after notification of the police.

A formal notice of disciplinary action was sent to the Sterns. A meeting was held on November 26, 1979, with the Sterns in attendance. The result of the meeting was student Stern's suspension for the rest of the semester. The suspension also precluded him from any participation in extracurricular activities during the same period. The complaint does not allege anything about the conduct of the meeting itself or that an appeal from the meeting was available or taken.

Under the Michigan Public Meetings Act, M.S.A. § 4.1800 et seq. [M.C.L.A. § 15.251 et seq.], parents can elect to have such a meeting open or closed to the public. This section is not cited in plaintiffs' complaint but it is mentioned in their brief in response to this motion. The complaint, however, does allege that the Sterns elected to have the meeting closed to the public. Nevertheless, on or about November 28, 1979, an article appeared in the local newspaper (The Sommerville Communications Corporation, d/b/a The Review), stating that minor Stern had been expelled for the aforementioned reasons.

Plaintiffs do not state in their complaint that this is an action for damages under 42 U.S.C. § 1983. The Court surmised that fact in its Order of April 23, 1981. However, in a brief submitted in response to this motion, plaintiffs do indeed claim that this is such an action.

For the purpose of this opinion, the Court will assume that plaintiffs' complaint complies with F.R.Civ.P. 8(e)(1). It will further assume the factual allegations to be true and that they involve state action. Additional assumptions are made as the Court analyzes each plaintiff's personal claims.

DAVID STERN

The threshold question raised by defendants' motion is whether the factual allegations and legal claims can support an action under 42 U.S.C. § 1983. At the outset, the Court notes that the basic purpose of a Section 1983 damage award is to compensate persons for injuries caused by the deprivation of a constitutional right or a federal law. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). There is no allegation that a federal law is involved. Plaintiff only claims he has been deprived of several substantive constitu-

tional guarantees. The Court's scrutiny is limited accordingly.

Counts II through V of the complaint, each at some point, refer to the alleged communication by defendants of the Board meeting and the subsequent publication thereof in *The Review.* Counts II and III claim that the communication and/or publication "constituted an invasion or intrusion of plaintiff minor David Stern's privacy in that it, among other things, disclosed embarrassing private facts and intruded into his seclusion or solitude." Plaintiff maintains that this allegation states a federally recognized claim. Relying solely on *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), plaintiff argues that "privacy is itself a constitutionally protected right."

█ In the context of this case, the Court must reject plaintiff's broad allegation. Cf. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Court notes initially that 42 U.S.C. § 1983 is not concerned with a violation of only state law. *Sigler v. Lowrie,* 404 F.2d 659 (CA 8, 1968). Similarly, mere state action does not satisfy the requirements of Section 1983. *See, Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). It is only when a violation of state law results in an infringement of a federally protected right that a cause of action can be maintained under this section. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Gore v. Wochner,* 475 F.Supp. 274 (D.C.Mo., 1979) aff'd 620 F.2d 183 (CA 8, 1980), cert. denied 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96.

█ In the instant matter, neither the "privacy" allegedly invaded nor the "interest" allegedly infringed is "secured by the Constitution of the United States." Cf. *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980); *Monroe v. Pape,* 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J. concurring); *Screws v. United States,* 325 U.S. 91, 109, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945). The privacy allegedly invaded does not involve those "zones of privacy"

which emanate from "specific constitutional guarantees;" nor does it deal with those substantive aspects of the Fourteenth Amendment which are " 'fundamental' or 'implicit in the concept of ordered liberty.' " *Paul v. Davis,* 424 U.S. 693, 712–713, 96 S.Ct. 1155, 1165–1166, 47 L.Ed.2d 405 (1976). Rather, the "privacy" which plaintiff claims to have been invaded and the "interest" which plaintiff attempts to vindicate derive their legal foundations from traditional state tort law. *See, Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522 (1977); *Earp v. City of Detroit,* 16 Mich.App. 271, 167 N.W.2d 841 (1969). This traditional common law cause of action, standing alone, is not cognizable under the Civil Rights Act of 1871. *Paul v. Davis, supra; McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 76–79 (CA 8, 1976), cert. denied 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131; *Travers v. Paton,* 261 F.Supp. 110 (D.Conn., 1966), and cases cited therein.

█ Count IV appears to be directed at former defendant Sommerville Communications Corporation. Count V states a claim for the intentional infliction of emotional distress. For the previously stated reasons, this is not a claim cognizable under 42 U.S.C. § 1983. *See, Robinson v. McCorkle,* 462 F.2d 111, 114 (CA 3, 1972), cert. denied 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492. Rather, it is a common law cause of action which is recognized by the State of Michigan. *Warren v. June's Mobile Home Village and Sales Inc.,* 66 Mich.App. 386, 239 N.W.2d 380 (1976); *Jankowski v. Mazzotta,* 7 Mich.App. 483, 152 N.W.2d 49 (1967). Assuming Counts II through V also allege an action for defamation, the conclusion that no federal claim is raised, must still apply. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Brainerd v. Potratz,* 421 F.Supp. 836, 840 (N.D.Ill., 1976), aff'd 566 F.2d 1177 (CA 7, 1977).

The Court now turns to Count I of the complaint. Paragraph 14 alleges that:

The defendants conspired together to deprive and did deprive minor DAVID STERN of his rights, privileges, and im-

munities secured by him under the constitution and laws of the United States specifically including, but not limited to: (a) Plaintiff minor DAVID STERN's right to be free of a deprivation of liberty without due process and equal protection, as provided by the Fourteenth Amendment to the United States Constitution. (b) Plaintiff minor DAVID STERN's right to be free of unreasonable search and seizure as provided by the Fourth Amendment to the United States Constitution. (c) Plaintiff minor DAVID STERN's right to the privacy and integrity of his person, as protected by the penumbra of rights secured under the first Ten Amendments to the United States Constitution. (d) Plaintiff DAVID STERN's right to be free of excessive and disproportionate punishment beyond the authority of the defendants and in violation of the Eighth Amendment in the form of publicity and undue notoriety. (e) Plaintiff minor DAVID STERN's right to be free of coercion to secure a confession as provided by the Fifth Amendment to the United States Constitution.

█ The Court observes that the introductory lines to Paragraph 14 allege a conspiracy. For the reasons stated in its Order of April 23, 1981, the Court must dismiss the allegation of a conspiracy. *See, Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Taylor v. Brighton*, 616 F.2d 256, 266–267 (CA 6, 1980); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (CA 1, 1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978). With regard to Paragraph 14(c) and (d), the Court notes that the Eighth Amendment is not applicable to issues involving student discipline. *Ingraham v. Wright*, 430 U.S. 651, 671, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). An Eighth Amendment analysis only attaches after the "State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham, supra* at 671, n. 40, 97 S.Ct. at 1412, n. 40; *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Since there has been no adjudication of guilt of a criminal law in this case, there can be no Eighth Amendment violation. *Id.* To the extent that Paragraph 14(c) and (d) implicate state recognized privacy rights, the Court has addressed their logical consequences previously.

Thus, assuming that Paragraph 14 still retains vitality, minus the allegation of a conspiracy, the Court must address the facts surrounding the bathroom incident and determine whether they support a claim under 42 U.S.C. § 1983. In this regard, plaintiff maintains that defendants engaged in "constitutionally-proscribed behavior" by the surveillance of the boys' restroom and by telling plaintiff that "the police would not be called if they would confess, and then violate that promise..." For the purpose of this opinion, the Court will further assume that a search and seizure actually occurred as a result of the bathroom "incident."

█ The Court begins its analysis with the obvious; public school students possess both procedural and substantive rights. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). As suggested by the Court's previous discussion, a federal claim is pled when the allegation alleges an invasion of privacy which is part of or incident to an unreasonable search and seizure; e.g. a zone of privacy emanating (here) from a specific constitutional guarantee. *Paul v. Davis, supra*, 424 U.S. at 712–713, 96 S.Ct. at 1165–1166. See also *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, the sole issue remaining is whether under the facts herein, the plaintiff, a tenth-grade student at New Haven High School, had a reasonable expectation of privacy in the place searched, the boys' restroom at said school during school hours.

█ In *Katz v. United States*, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511–512, 19

L.Ed.2d 576 (1967), the Supreme Court held that:

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The breadth of this "zone or privacy" and thus the extent of the Fourth Amendment's protection is determined by two basic factors. The first factor is whether the person in question "exhibited an actual (subjective) expectation of privacy." *Id.* at 361, 88 S.Ct. at 516 (Harlan, J., concurring). The second factor is whether the "expectation of privacy be one that society is prepared to recognize as 'reasonable.'" *Id.* Reasonableness, in this case, may be approached by balancing the school's interest in the search and the plaintiff's interest in privacy. Cf. *Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968).

█ The Court is of the opinion that defendants' limited view of the boys' restroom through a two-way mirror neither invaded nor violated any of plaintiff minor's federally secured rights under the Fourth Amendment. Plaintiff's implicit and explicit assertions that under these facts he enjoyed the full compliment of Fourth Amendment protections has been consistently rejected by the courts. *See Zamora v. Pomeroy,* 639 F.2d 662 (CA 10, 1981) (warrantless search of a school locker after trained dogs indicated the presence of marijuana therein); *Bilbrey v. Brown,* 481 F.Supp. 26 (D.Or., 1979) (Fourth Amendment does not require a warrant be obtained before searching a student); *Doe v. Renfrow,* 475 F.Supp. 1012 (N.D.Ind., 1979) *modified on different issue,* 631 F.2d 91 (1980) (presence of marijuana sniffing dog in classroom for the purpose of aiding school administrators not a "search", and no violation of Fourth Amendment rights even without probable cause because of independent evidence of drug use in the school); *M. v. Board of Education Ball-Chatham-C. V. S. D. No. 5,* 429 F.Supp. 288 (S.D.Ill., 1977)

(search of high school student was reasonable where school official had reasonable cause to believe that student had drugs on him based on another student's observations). Thus, *York v. Story,* 324 F.2d 450 (CA 9, 1963), the case which plaintiff relies upon in this regard, is inapposite. The scandalous and significantly different facts in *York* are clearly distinguishable from the facts herein.

Society is prepared to recognize a lesser expectation of Fourth Amendment privacy rights for students during school for a variety of long held reasons. In the context of a warrantless search of a school locker, the United States Court of Appeals for the Tenth Circuit recently summarized many of the reasons in *Zamora v. Pomeroy,* 639 F.2d 662, 667, 670 (CA 10, 1981).

The basic theory is that although a student has rights under the Fourth Amendment, these rights must yield to the extent that they interfere with the school administration's fundamental duty to operate the school as an educational institution and that a reasonable right to inspect is necessary in the performance of its duties, even though it may infringe, to some degree, on a student's Fourth Amendment rights. The courts which have considered this question have noted that the doctrine in loco parentis expands the authority to school officials, even to the extent that it may conflict with the rules set forth in the Fourth Amendment. Some cases have gone so far as to say that the school authorities have an affirmative duty to search the lockers.

The logical explanation for all of this is that the school authorities have, on behalf of the public, an interest in these lockers and a duty to police the school, particularly where possible serious violations of the criminal laws exist.

The Court observes that the limited surveillance of the boys' restroom was done by school officials and not police authorities. Furthermore, only school disciplinary action and not criminal action was taken as a result of the surveillance. Finally, the

Court cannot ignore the significant community interest problem that school discipline raises, particularly when drugs are involved. As noted in *Zamora, supra* at 667, "school authorities cannot, of course, tolerate the storing of marijuana in a school locker by a student. It tends to be a per se type of infraction..."

In applying the above, the Court concludes that when plaintiff's privacy interest is weighed against the defendants' duty to maintain order and discipline (so to foster an educational environment) and to fulfill their responsibilities under the in loco parentis doctrine (so as to protect the health and welfare of plaintiff and all the students at New Haven High School), the facts herein neither support a Fourth Amendment violation nor present a case of a constitutional magnitude.

 Nor does the Court believe that the defendant-principal-Barnett's "breach" of his promise not to call the police raises a constitutional claim. While such a claim may somehow raise the question of plaintiff's voluntariness in responding to the principal's inquiries, plaintiff does not allege that he became the subject of a criminal action. Clearly, Barnett had "reasonable cause to believe" that plaintiff had marijuana on his person. The law allows a principal to require a student to empty his pockets on such a belief. See *M v. Bd. of Educ. Ball-Chatham C.V.S.D. No. 5, supra*, 429 F.Supp. 288 (S.D.Ill., 1977). To hold that the Fifth Amendment was seriously implicated under the facts herein, would result in an unwarranted constitutionalization of nearly every activity that takes place in a principal's office; a situation the Supreme Court has long warned against. *Cf. Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975); *McCollum v. Board of Education*, 333 U.S. 203, 235–237, 68 S.Ct. 461, 477–478, 92 L.Ed. 649 (1948); *Minersville School District v. Gobitis*, 310 U.S. 586, 598, 60 S.Ct. 1010, 1014, 84 L.Ed. 1375 (1940).

LOREN and LORETTA STERN

 Counts VI and VIII of the complaint also refer to the communication by the defendants of the Board meeting and the subsequent publication thereof in *The Review*. Each count alleges that the "aforesaid communications and publication constituted an invasion of and intrusion of (their) privacy in that it, among other things, disclosed embarrassing private facts and intruded into (their) seclusion or solitude." For the reasons previously stated, this claim is not cognizable under 42 U.S.C. § 1983.

Counts VII and IV claim a common law cause of action for the intentional infliction of emotional distress; another claim not cognizable under 42 U.S.C. § 1983.

As stated in the Court's Order of April 23, 1981, "[p]endent jurisdiction over plaintiffs' state law claims against (defendants) will not be exercised in the absence of any federal claim ... *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)."

CONCLUSION

Defendants' motion for summary judgment pursuant to F.R.Civ.P. 56(b) is hereby GRANTED as to the constitutional allegations in Count I of plaintiff David Stern's complaint. Defendants' motion to dismiss per F.R.Civ.P. 12(b)(6) is hereby GRANTED as to all other claims by plaintiffs.

IT IS SO ORDERED.