## SCHULTZ v. SAPIRO

1. TRIAL—BURDEN OF PROOF.

Each party has the burden of proof of his own asserted cause of action and each has the burden of proceeding with the proof of his asserted defense, in a case of claim and counterclaim.

2. CONTRACT—MEASURE OF DAMAGES.

The measure of damages for breach of a building contract, when repairing the structure would be unreasonably expensive, as being the difference between the value of a defective structure and the value of that structure if properly completed may not be considered as an alternative rule of damage by the court, where that theory of recovery has not been pleaded by either party nor been the subject of any proof by either party.

Appeal from Lenawee, Rex B. Martin, J. Submitted Division 2 March 5, 1970, at Lansing. (Docket No. 6,519.) Decided April 27, 1970.

Complaint by William Schultz against Marvin Sapiro and Gloria Sapiro for payment on a contract, and counterclaim by Marvin Sapiro and Gloria Sapiro against William Schultz for breach of contract. Judgment for plaintiff. Defendants appeal. Reversed in part and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 123–132.
[2] 22 Am Jur 2d, Damages §§ 46–79, 271.

*Baker, Durst & Engle,* for plaintiff.

*James I. Moran,* for defendants.

Before: J. H. Gillis, P. J., and Danhof and O'Hara,\* JJ.

O'Hara, J. This is an appeal of right from an order denying a motion for a new trial.

The action was brought by plaintiff-appellee to collect the balance due on a contract for the construction of an addition to the home of defendants-appellants. Defendants counterclaimed for damages for breach of the contract.

The contract price for the addition was $10,650. Plaintiff sought a further payment of $1,002.36 for "extras" alleged to have been ordered by defendants-counterplaintiffs. Defendants' counterclaim was for $3,940.

Little value to the trial bench or bar would result from detailing the testimony of the parties. Fairly read, the record discloses that the principal item of complaint in the new construction was that an heroic size fireplace in the downstairs room of the addition was totally nonfunctional. On cross-examination of the plaintiff contractor the following question and answer were recorded:

"*Q.* In other words there's no question that this fireplace doesn't work, is there?
"*A.* That is correct."

During the course of the work, defendants-counterplaintiffs decided to include a fireplace in the upstairs bedroom. They asked the contractor the cost

---

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

and agreed to pay it. For reasons not clear from the record, a subcontractor hired by plaintiff-counterdefendant located the second fireplace immediately above the one in the downstairs room. In consequence the draft of the downstairs fireplace was shut off. It became useless as a fireplace and its value, if any, was limited to whatever esthetic appeal a nonfunctioning fireplace may have. This is admitted. There was equivocal, and somewhat inconclusive testimony *pro* and *contra* that the condition of the fireplace might be corrected by the installation of a forced-draft fan. Plaintiff contractor testified he could not obtain permission of the owners to use the device anyway.

The total record exceeds 125 pages. A careful reading of the whole testimonial transcript reveals only one definitive uncontradicted statement of the cost to reconstruct the admittedly unsatisfactory downstairs fireplace, *i.e.,* $3,940. Of this figure, the trial judge had this to say:

"The defendants' (counterplaintiffs') expert said a forced ventilating system *might* work. He said rebuilding would cost $3,940. The court was impressed with the fact that Mr. Reed really did not think a $3,940 job was a fair solution here. He hitched around a bit in his chair and took some repeated questions before he would commit himself to saying a proper solution was to rebuild. Although this is a suit on the loss side of our calendar we certainly have *conflicting* equities." (Emphasis supplied.)

In review, we are sympathetic indeed to the effort of the trial judge in his effort to do equity between the parties. However laudable this purpose, its effect will not accord with the application of any rule of damage with which we are familiar, or which has been called to our attention.

The irreducible fact is the only definitive figure of damage we can find in the testimony is the $3,940 dollar figure. As to this figure, the trial judge further found:

"To the court, this seems a case where defective design cannot be remedied at a reasonable expense without great sacrifice of work already done."

Having so found the court next considered an alternative rule of damage which he determined could be applied under these circumstances. This theory of recovery had not been the subject of any proof by either party, nor was it specifically pleaded. As to this theory, he held:

"76 ALR2d 808 has the most recent annotation on the subject. The general rule seems to be that where the particular omission or defect in the builder's performance may be remedied by the owner at reasonable expense, the cost of remedying the defects is the owner's measure of damage. If, however, the contractor has failed in performance, but to repair would require a substantial tearing down or rebuilding and would be unreasonably expensive, then the measure of damage is the difference between the value of the defective structure and that of the structure if properly completed. Michigan follows this view. See *Gutov* v. *Clark* (1916), 190 Mich 381 and *P & M Construction Company, Inc.,* v. *Hammond Ventures, Inc.* (1966), 3 Mich App 306.**

\* \* \*

"The defendant (counterplaintiff) has offered no definitive proof of the difference in value as the defendants relied on the cost of the change as the sole allowable measure of damages. The defendant (counterplaintiff) has not said a forced draft fan would not work, or not be suitable for mitigation of damages. \* \* \* With no explicit guidelines from

---

** See, also, *Caradonna* v. *Thorious* (1969), 17 Mich App 41.

the testimony, the Court would be convinced at least from inference and common sense that $600 would be a fair figure for defendant's loss."

In summary then, there was no conclusive proof that the forced draft fan would correct the defect.

There was no proof of the value of the addition as improperly constructed as against the value had it been properly constructed.

This is a case of claim and a counterclaim. Each party had the burden of proof of his own asserted cause of action. Each had the burden of proceeding with the proof on his asserted defense.

As we view the record, plaintiff-counterdefendant contractor failed in his proof that the ventilating fan could correct the defective condition of the fireplace, which defective condition was admitted.

Defendants-counterplaintiffs established the corrective cost of reconstruction as $3,940. The court rejected this theory of recovery as heretofore noted, because the cost of the remedial work was unreasonable.

Defendants-counterplaintiffs failed to furnish proof in support of the theory on which the trial court decided the case. However, in support of their motion for a new trial they affixed to the motion an affidavit of this measure of damage in the amount of $6,000. Without an opportunity of cross-examination of the realtor who executed the affidavit, it would be grossly unfair to plaintiff-counterdefendant to accept such after-proffered testimony.

We conclude, as did the trial judge, that there were "no explicit guidelines from the testimony" as to the damages resulting from the defective condition of the fireplace.

Were we to affirm, we too at best would be resorting to impermissible inference.

While we are reluctant to remand fully tried cases that have consumed the time of busy counsel, and utilized sorely needed judicial man hours, we can see no alternative to remanding the case for partial retrial on the issue of damages resulting from the admitted fact that the downstairs fireplace is nonfunctional. The balance of the items in the trial court's findings of damages were not seriously challenged. We do not disturb them.

As was said in *Kistler* v. *Wagoner* (1946), 315 Mich 162, and reaffirmed in *Bias* v. *Ausbury* (1963), 369 Mich 378, 383:

"While permitted by rule, we do not favor partial new trials, limited to damages alone."

However, in the case at bar we think this is the most satisfactory manner of doing justice to both parties.

Reversed and remanded as above limited.

No costs, neither party having prevailed in full.

All concurred.