*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HEATHER MALONE,

      Plaintiff-Appellant,

v

CONOR THOMPSON MCRELL and ZHETMAN
BRIGHTON, LC,

      Defendants-Appellees,

and

FARMERS INSURANCE EXCHANGE,

      Defendant.

UNPUBLISHED
September 22, 2022

No. 356416
Livingston Circuit Court
LC No. 19-030275-NI

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

RONAYNE KRAUSE, J. (*dissenting*)

I respectfully dissent. I agree that the trial court properly denied plaintiff's motion to set aside the stipulated order dismissing McRell. However, because I find the parties' settlement agreement ambiguous on its face, and the parties' conduct is equally unclear, I would vacate the trial court's order granting summary disposition in favor of Zhetman and remand for an evidentiary hearing regarding the parties' intentions, consistent with Justice BOYLE's proposed resolution in *Theophelis v Lansing Gen Hosp*, 430 Mich 473, 493-497; 424 NW2d 478 (1988) (BOYLE, J).[1] Furthermore, because a "covenant not to sue" and a "release" are functionally identical for the parties to the agreement, I also join Justice Levin in questioning whether there remains any value

---

[1] Although a concurring opinion is not binding, it may be considered persuasive. See *DeMaria v Auto Club Ins Ass'n*, 165 Mich App 251, 254; 418 NW2d 398 (1987).

in retaining any distinction between the two, especially where the distinction mostly serves as a trap for the unwary. See *id*. at 499-505 (LEVIN, J).

## I. FACTUAL BACKGROUND

Zhetman employed McRell to deliver pizzas.[2]  While McRell was driving his personal vehicle in the course and scope of that employment, he rear-ended plaintiff, causing her to suffer injuries.  In relevant part, plaintiff sued McRell for negligently crashing into her vehicle, and plaintiff sued Zhetman for vicarious liability under the doctrine of respondeat superior.  Plaintiff and McRell eventually entered into a settlement agreement, which stated as follows:

> The Plaintiff shall accept $50,000 in full settlement of her action against the Defendant Connor [*sic*] McRell only.  The settlement will not affect the Plaintiff's cause of action against Defendant Zhetman Brighton LC, nor the action for PIP benefits against the Defendant Farmers.[3]

> The Defendant McRell shall be dismissed from the present action however his involvement as a potential witness will not be affected by this settlement.

> The action is to be dismissed with prejudice and without costs as to Defendant McRell only, and appropriate Releases will be forwarded and signed.

The settlement agreement was signed by plaintiff's representative and by attorneys for plaintiff and for McRell.  A stipulated order of dismissal was subsequently entered by the trial court, ordering that McRell "is hereby dismissed with prejudice and without costs," and further stating that the order did not resolve the last pending claim or close the case.  Attorneys for plaintiff and for McRell signed the order approving it as to form and substance.  However, the settlement agreement was apparently drafted by a facilitator, not by the parties.

After McRell was dismissed from the case, Zhetman filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing that because McRell was dismissed from the case, plaintiff's respondeat superior claim against Zhetman must also be dismissed, because if an agent is released from a lawsuit, the principal must also be released from any claims of vicarious liability.  The trial court granted Zhetman's motion for summary disposition pursuant to MCR 2.116(C)(7) regarding plaintiff's respondeat superior claim.  Because the trial court also dismissed plaintiff's other claims against Zhetman, the trial court dismissed Zhetman with prejudice from the lawsuit.  Plaintiff then moved, under MCR 2.612(C)(1)(a), (c), and (f), to set aside the stipulated order dismissing McRell, arguing that the settlement agreement was rendered void by the dismissal of her respondeat superior claim against Zhetman.  Following the trial court's denial of that motion, plaintiff moved for reconsideration, arguing that the settlement agreement should be construed as a covenant not to sue rather than as a release.  The trial court denied plaintiff's motion for reconsideration, and this appeal followed.

---

[2] Although not clearly stated in the record, it appears that Zhetman is a Jet's Pizza franchisee.

[3] Plaintiff's claims against Farmers Insurance Exchange are not at issue in this appeal.

## II. STANDARDS OF REVIEW

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(7), the trial court must accept as true the contents of the complaint, unless they are contradicted by documentary evidence submitted by the moving party. *Id*. at 119. Summary disposition under MCR 2.116(C)(7) is permissible "because of release, payment, prior judgment, [or] immunity granted by law." MCR 2.116(C)(7). The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). We also review de novo as a question of law the proper interpretation of a contract, including a trial court's determination whether contract language is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion. *Jackson v Bunk AG Innovations, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356935); slip op at 3. A trial court's decision regarding whether to set aside a judgment under MCR 2.612 is also reviewed for an abuse of discretion. *Adler v Dormio*, 309 Mich App 702, 707; 872 NW2d 721 (2015). A trial court abuses its discretion "when its decision falls outside the range of reasonable and principled outcomes." *Jackson*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted).

## III. ANALYSIS

Vicarious liability is a theory of "indirect responsibility imposed by operation of law" under which a principal is deemed constructively responsible for the conduct of an agent. *Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 11; 651 NW2d 356 (2002) (quotation omitted). No judgment need be rendered against the agent; rather, "a plaintiff need only prove that an agent has acted negligently" for that negligence to be imputed to the principal. *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294-295; 731 NW2d 29 (2007). However, in Michigan, a valid release of the agent will also release the principal, irrespective of whether the release purports to reserve claims against the principal. *Theophelis*, 430 Mich at 480 (GRIFFIN, J.), 493 (BOYLE, J.); 424 NW2d 478 (1988).[4] Conversely, a covenant not to sue will not discharge the principal. *Id*. at 492 (GRIFFIN, J.), 500, 503-505, 516 (LEVIN, J.).

---

[4] No opinion in *Theophelis* was signed by more than three Justices. Justice GRIFFIN's opinion was also signed by Justice BRICKLEY and Chief Justice RILEY, and Justice BOYLE specifically agreed with Justice GRIFFIN "that the release of the agent of a vicariously liable principal operates to discharge the principal." *Theophelis*, 430 Mich at 493. This Court has therefore treated *Theophelis* as binding as to that particular point of law. See *Larkin v Otsego Mem Hosp Ass'n*, 207 Mich App 391, 393 n 1; 525 NW2d 475 (1994). This Court is now bound to follow that determination. MCR 7.215(J)(1).

The courts are not bound by the labels parties might give to their documents; rather, we determine the nature of a particular instrument by examining its substance and what the document actually does. *Hartford v Holmes*, 3 Mich 460, 463 (1855); *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958); *John Deere Co v Wonderland Realty Corp*, 38 Mich App 88, 91; 195 NW2d 871 (1972). It should therefore be expected that whether a particular agreement is a release or a covenant not to sue does not depend upon what the parties called the agreement, but rather upon "its terms, the words used, the amount paid, the substance of the agreement, and the intention of the parties." *Theophelis*, 430 Mich at 497 (BOYLE, J.) (quotation omitted). Our Supreme Court has explained the substantive distinction as follows:

> A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action. The difference primarily affects third parties, rather than the parties to the agreement. [*J&J Farmer Leasing, Inc v Citizens Ins Co of America*, 472 Mich 353, 357-358; 696 NW2d 681 (2005).]

In *J&J Farmer Leasing*, our Supreme Court found it significant that the agreement in that case was conditional upon one of the parties performing certain duties, rather than absolute, and therefore it was a covenant not to sue instead of a release. *Id*. at 358. Furthermore, the agreement explicitly stated that it might be rendered null and void if the other party did not cooperate. *Id*. at 356 n 4.

The nature of the settlement agreement here is not entirely clear. However, some clues in its language are suggestive. The settlement agreement is phrased entirely in the future tense, suggesting that it does not have immediate effect. The parties unambiguously expected that plaintiff's claims against Zhetman would continue, and McRell is impliedly obligated to be a witness in the proceedings. Most notably, the parties expressly specified that some kind of *future* release would be entered into at a later date, as a separate transaction. Contracts should be construed to avoid rendering any part surplusage or nugatory. See *Lebenbom v UBS Financial Svcs, Inc*, 326 Mich App 200, 216; 926 NW2d 865 (2018). To construe the settlement agreement as *itself* being a release would impermissibly render its final clause surplusage. Nevertheless, although phrased in the future tense, the parties' language is seemingly absolute, and as noted, the parties' choice of labels is not dispositive. As observed by Justice Boyle, simply because the parties used the word "release" does not necessarily mean they intended to use that word as a specific term of art. See *Theophilis*, 430 Mich at 496 (BOYLE, J). This is especially concerning given that the settlement agreement was drafted by a facilitator. I conclude that when the settlement agreement is read as a whole, see *Lebenbom*, 326 Mich App at 216, the agreement is ambiguous on its face as to whether the parties intended it to be a release or a covenant not to sue.

At oral argument, it was represented that proposed releases were drafted but never actually signed, suggesting that the settlement agreement was not understood by plaintiff or McRell to be a release. It was also established that McRell's only concern is ensuring that he will not be brought back into the case. McRell has not paid the $50,000 specified in the settlement agreement because he believes he lacks that assurance. Nevertheless, the parties stipulated to a dismissal with prejudice, suggesting that they believed McRell *was* insulated from being brought back into the case. Importantly, as noted above, the distinction between a release and a covenant not to sue is essentially irrelevant as between the signatories to the instrument. *J&J Farmer Leasing*, 472 Mich

at 357-358. That the stipulated order was with prejudice, rather than without prejudice, is consistent with a belief that the parties did not intend to reinstate plaintiff's claims against McRell if her claims against Zhetman were dismissed for any reason other than construing the settlement as a release. The parties clearly expected plaintiff's claims against Zhetman to continue, and it can be presumed that plaintiff fully intended to execute an instrument preserving her claims against Zhetman. Although McRell has opposed such an interpretation, McRell's conduct calls that opposition into some question.[5]

I think, under the circumstances, the proper resolution of this matter would be to follow Justice BOYLE's concurrence in *Theophelis* and remand for an evidentiary hearing to take parol evidence to resolve the ambiguity of the parties' intentions. *Theophelis*, 430 Mich at 493-497 (BOYLE, J.). I recognize that plaintiff did not advance an argument referring to a "covenant not to sue" by name until late in the litigation. However, the dispositive question is what the parties intended, not whether they invoked the correct terminology.[6] As discussed, further compounding the problem is that the settlement agreement was apparently drafted by a facilitator, not by the parties. It is probable that it simply never even occurred to anybody whether some hypertechnical turn of phrase would have such significant consequences. See *id*. at 499-505 (LEVIN, J).

For the above reasons, I cannot conclude that it was improper for the trial court to decline to set aside the stipulated order dismissing McRell with prejudice. If, after holding an evidentiary hearing, the trial court were to determine that the parties did intend to execute a "release" as a term of art, then the stipulated order of dismissal with prejudice was proper, summary dismissal of Zhetman was also proper, and plaintiff would be immediately entitled to her $50,000 from McRell. Conversely, if the trial court were to determine that the parties intended to execute a covenant not to sue (whether or not they were aware of the proper terminology), then summary dismissal of plaintiff's vicarious liability claim against Zhetman under MCR 2.116(C)(7) was erroneous, and that claim must be reinstated. However, the dismissal of McRell with prejudice would still be

---

[5] I note that McRell took the position that the settlement agreement was neither a release nor a covenant not to sue, but rather a contract to enter into a future release. I do not accept that interpretation, because the parties' stipulation to dismiss McRell with prejudice is incompatible with the fact that both parties have plainly refused to perform under such a hypothetical contract.

[6] As was discussed at oral argument, plaintiff's request to reform the parties' settlement agreement is not properly before us. Nevertheless, I briefly note that the trial court was correct in observing that a mutual mistake as to the legal effect of a contract generally is not grounds for reforming a contract, whereas a mutual mistake as to the legal meaning of the words used in a contract may entitle the parties to have the contract reformed to accurately express their intentions. *Johnson Family Ltd Partnership v White Pine Wireless LLC*, 281 Mich App 364, 379- 380; 761 NW2d 353 (2008); *Scott v Grow*, 301 Mich 226, 236- 238; 2 NW2d 254 (1942). In other words, did the parties misunderstand the nature of what they signed because they incorrectly thought the words meant something else, or did they misunderstand the ramifications of what they signed? I think, under the circumstances, that there is sufficient ambiguity on the face of the settlement agreement that the issue is presently interpretation, not reformation. I would therefore decline to address whether the settlement agreement should be reformed at this stage of the proceedings, in any event.

appropriate, because, as discussed above, the nature of the settlement agreement would only affect whether the vicarious liability claim against Zhetman could be dismissed on the specific grounds of release pursuant to MCR 2.116(C)(7). As discussed, there is no practical distinction between a release and a covenant not to sue as between the parties to the instrument, so McRell would remain insulated from being brought back into this case as to any claims by Malone, irrespective of whether the vicarious liability claim against Zhetman may proceed. However, if the settlement agreement is a covenant not to sue, then although McRell may be assured he will not be brought back into the suit, I am not persuaded that McRell is obligated to pay the $50,000 until such time as plaintiff does execute a formal release.[7]

I would affirm the trial court's denial of plaintiff's motion to set aside the stipulated order dismissing McRell. However, I would vacate the trial court's order granting summary disposition in favor of Zhetman, and I would remand this matter to the trial court for the unenviable task of resolving what the parties actually intended to accomplish when they signed the settlement agreement, or, at a minimum, to determine whether the parties understood the legal effect of the terminology used in the settlement agreement.

/s/ Amy Ronayne Krause

---

[7] The settlement agreement does not specify any deadline.